**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amie M. Gressett,[1] | No. CV-12-00185-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Central Arizona Water Conservation District as the operating agency for the Central Arizona Project, | |
| Defendant. | |

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. 96), Plaintiff Amie Gressett's Motion for Partial Summary Judgment (Doc. 94), and Plaintiff's Motion to Strike 111 Extraneous and Unnecessary Statements of Fact and Request for Expedited Consideration (Doc. 98). The Court now rules on the motions.

**I.  Motion to Strike**

Plaintiff moves to strike 111 paragraphs contained within Defendant's Statement of Facts in Support of Defendant's Motion for Summary Judgment (Doc. 97) because that they were not cited in Defendant's motion and thus are unnecessary for deciding the motion. (Doc. 98 at 1). Plaintiff claims this inclusion of unnecessary statements of fact violates Local Rule of Civil Procedure ("Local Rule") 56.1(a). (*Id.*) Defendant admits that its statement of facts in support of its motion for summary judgment included "paragraphs that were not specifically cited in its [m]otion" but argues that because a

---

[1] The caption to Plaintiff's complaint lists "Aime." (Doc. 1 at 1).

moving party may not supplement its statement of facts, it included paragraphs in its statement of facts that it "believes might reasonably be necessary to reply to Plaintiff's anticipated arguments." (Doc. 101 at 2).

### A. Legal Standard

Local Rule 7.2 provides that "a motion to strike may be filed only if it is authorized by statute or rule . . . or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1). The applicable rule for statements of facts in support of a motion for summary judgment is Local Rule 56.1, which provides:

> Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion. The separate statement should include only those facts that the Court needs to decide the motion. Other undisputed facts (such as those providing background about the action or the parties) may be included in the memorandum of law, but should not be included in the separate statement of facts.

LRCiv 56.1(a).

### B. Analysis

Plaintiff's impetus for filing a motion to strike was to avoid having to address the allegedly extraneous facts in her controverting statement of facts. *See* (Doc. 98 at 3). Accordingly, Plaintiff asked for expedited consideration of her motion before March 3, 2014, the date on which her responsive memorandum was due. (*Id.*) Plaintiff has since filed her responsive memorandum and controverting statement of facts in which she objects to each of the 111 paragraphs on the basis that they were improperly included in the statement of facts.

Although at first glance Plaintiff's motion appears to be moot, Federal Rule of Civil Procedure ("Rule") 56(c)(3) permits the Court in ruling on a motion for summary judgment to consider materials in the record but not cited in the motion. Consequently, striking facts offered in support of Defendant's motion for summary judgment could affect the Court's ruling on the motion, and the Court will consider Plaintiff's motion.

1   The essence of Plaintiff's argument is that because Local Rule 56.1 limits the inclusion of facts in the statement of facts to "only those facts that the Court needs to decide the motion" and Defendant does not cite the facts at issue in its motion, those facts are not needed to decide the motion and their inclusion thus violates Local Rule 56.1. Plaintiff urges that the appropriate venue for Defendant to use these extraneous facts was to "discuss them in the reply memorandum[] and attach supporting evidence to that brief." (*Id.*) Plaintiff cites *Kinnally v. Rogers Corp.*, 2008 WL 5272870 (D. Ariz. Dec. 12, 2008) and *Marceau v. International Brotherhood of Electrical Workers*, 618 F. Supp. 2d 1127 (D. Ariz. 2009) for this proposition. These cases do not support the urged proposition.

In *Kinnally*, a party filed a reply in support of its motion for summary judgment in which it attached additional exhibits and it also separately filed objections to the non-movant's controverting statement of facts. 2008 WL 5272870, at *1. The Court noted that "[t]he Local Rules do not contemplate attaching additional exhibits to replies in support of summary judgments or filing a separate response to the non-moving party's statement of facts," and struck the reply and objections. *Id.* at *2. Similarly, in *Marceau*, the Court held that Local Rule 56.1(d) "does not permit the moving party to file a separate responsive memorandum to any additional facts in the non-moving party's separate statement of facts." 618 F. Supp. 2d at 1141. Rather, the Court noted that Local Rule 7.2(m)(2) requires that "[a]ny response to the objection must be included in the responding party's reply memorandum for the underlying motion and may not be presented in a separate responsive memorandum" and held that the movant's separately-filed objections to the non-movant's separate statement of facts was improper. *Id.* (quoting LRCiv 7.2(m)(2)).

Thus, the movant may neither attach new evidence to its reply memorandum nor file separate objections to the non-movant's controverting and additional statements of facts. Instead, the movant may use its reply memorandum to respond to the non-movant's *objections* to the movant's supporting statement of facts. *See* LRCiv 7.2(m)(2). Plaintiff's

contention that Defendant can introduce its extraneous facts for the first time in its reply if needed is simply incorrect.

The Court agrees with Defendant that its decision in *Dowling v. Arpaio*, 2012 WL 300547 (D. Ariz. Feb. 1, 2012) is apposite here. In *Dowling*, a portion of the movant's statement of facts were not cited in its motion for summary judgment but were cited (for the first time) in the movant's reply. 2012 WL 300547, at *1. The Court noted that this was a violation of Local Rule 56 but found that the movant's noncompliance as well as related noncompliance by the non-movant were excusable and the "goals of the litigation" would not be furthered by strictly enforcing the Local Rules. *Id.* The situation in the present case is similar. Plaintiff has availed herself of her opportunity to make objections to the extraneous facts, and therefore denying the motion to strike does not prejudice Plaintiff.[2] The Court will deny the motion.

**II.     Motions for Summary Judgment**

Defendant moves for summary judgment on Plaintiff's claims for interference and retaliation under the Family and Medical Leave Act ("FMLA"). (Doc. 96 at 1). Plaintiff moves for partial summary judgment on the issue of liability. (Doc. 94 at 5).

**A.     Background[3]**

Defendant hired Plaintiff on October 16, 2006 as a "Safety VPP Specialist." (Doc. 105 ¶ 1). Her duties included coordinating medical safety programs, scheduling and monitoring the medical testing of employees as required for "safety sensitive positions," coordinating medical exams for employees, and working on safety inspection reports. (*Id.* ¶¶ 3-4).

Upon starting employment, Plaintiff received a copy of Defendant's employment handbook and acknowledged that she received and reviewed it. (*Id.* ¶ 5). Defendant's

---

[2] The Court also notes that some of the allegedly extraneous facts are in fact referenced in Defendant's motion. *See, e.g.*, (Doc. 96 at 5:6) (citing ¶ 185).

[3] For purposes of Defendant's motion for summary judgment, the Court views the facts in the light most favorable to Plaintiff. *See Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

- 4 -

1   Attendance Policy requires an employee who is unable to report to work because of
2   illness or injury to notify her manager "each day they are absent." (Doc. 97-1 at 254).
3   "This notification must be made in accordance with the call-in procedure for the
4   employee's work team or department," and the employee's immediate supervisor is
5   responsible for establishing the notification requirements. (*Id.*) Employees are required to
6   give notice "whenever possible before the beginning of the normal workday." (*Id.*) An
7   employee who is out is expected to "maintain daily contact with his/her supervisor and
8   keep him/her informed as to the anticipated return to work unless instructed otherwise."
9   (*Id.*) The Attendance Policy also states that an employee's "performance evaluation will
10  be impacted if their absences become so frequent that the value of the employee's
11  services are diminished." (*Id.* at 255). Excessive absences result in a "progressive
12  counseling process" and employees are subject to "corrective action up to and including
13  termination." (*Id.*) The Attendance Policy specifies that "[p]rogressive discipline may be
14  followed as dictated in the Corrective Action policy." (*Id.*)

15  Plaintiff was aware of Defendant's Corrective Action Policy, (Doc. 105 ¶ 21),
16  which provides for progressive discipline based on the particular circumstances of each
17  employee's infraction. (Doc. 97-1 at 241, 243). Consistent with the Attendance Policy,
18  the Corrective Action Policy specifies progressive corrective actions including a verbal
19  warning, written warning, suspension, and termination. (*Id.* at 243-44).

20  Defendant's position required her to work from 6:00 a.m. to 4:30 p.m. Monday
21  through Thursday. (Doc. 105 ¶ 49). Plaintiff's immediate supervisor was Mike Cook. (*Id.*
22  ¶ 2). Cook required his work team, including Plaintiff, to report any unexpected absences
23  by calling him. (*Id.* ¶ 16).

24  In Plaintiff's first performance review on January 8, 2007, Cook rated Plaintiff 3
25  out of 4 ("Meets Expectations") for attendance. (Doc. 97-2 at 76). In December 2007,
26  Plaintiff's annual performance review noted "some difficulties this year related to
27  [Plaintiff's] attendance" but that the issues were expected to be resolved. (*Id.* at 77).
28  Plaintiff's performance was also noted as "not acceptable . . . early in 2007" but had

1    improved during the balance of the year. (*Id.* at 80).

2            In May 2, 2007, Plaintiff was the subject of a Corrective Action verbal warning
3    concerning her frequent absences. (*Id.* at 98). Plaintiff was reported as having been absent
4    "over 140 hours" since beginning employment seven months prior. (*Id.*) Her absences
5    were noted as excessive; the Corrective Action Form noted that "[y]our frequent absences
6    are adversely affecting your job performance and impact the level of service provided by
7    the Safety and Health Department (example: the timeliness of scheduling employees for
8    medical examinations and your other work related activities.)." (*Id.*) Plaintiff and Cook
9    agreed that she was to advise Cook of any problems "resulting in time off as soon as
10   possible either in person or phone. Every effort will be made to makeup [sic] time during
11   the week it occurs." (*Id.*)

12           Plaintiff's 2008 performance review was unremarkable. *See* (*id.* at 83). However,
13   beginning in August 2009 Cook began keeping file notes on Plaintiff's attendance
14   history, which documented her frequent and irregular absences. (*Id.* at 102-30). Cook also
15   met regularly with Plaintiff and, in September 2009, discussed with Plaintiff her absences
16   and illness. (Doc. 105 ¶¶ 56, 64). In October 2009, Plaintiff obtained an FMLA leave
17   packet from human resources. (Doc. 105 ¶ 183). On October 21, 2009, Plaintiff informed
18   Cook that she needed FMLA leave. (Doc. 105-14 at 3). Plaintiff states that Cook called
19   Plaintiff that evening and threatened disciplinary action because of her absenteeism. (*Id.*)
20   On October 22, 2009, Plaintiff submitted a request for FMLA leave form, signed by both
21   herself and Cook. (Doc. 105 ¶ 183). Plaintiff's request for FMLA leave form stated that
22   the leave was for her own serious health condition, of a duration "as needed" continuing
23   indefinitely, and for as many hours "as needed." (Doc. 97-3 at 113).

24           On October 27, 2009, Plaintiff submitted a medical certification completed by her
25   healthcare provider, Ms. Eldridge, to Defendant's human resources department. (Doc.
26   105 ¶ 190). The certification identified Plaintiff's medical condition as "stress, family
27   circumstances, fatigue" beginning on October 19, 2009 and ending July 2010. (Doc. 97-2
28   at 166-67). It stated that Plaintiff needed a reduced work schedule of 1-3 hours per day,

1-3 days per week. (*Id.* at 167). Plaintiff was also identified as having "episodic flare-ups periodically preventing [Plaintiff] from performing [her] job functions" with an estimated frequency of once per week. (*Id.*)

Because the certification appeared to require up to three hours of FMLA leave per day for one to three days each week, Defendant clarified with Ms. Eldridge as to the extent of time off required. (Doc. 105 ¶ 194). On October 29, 2009, Defendant's Senior Compensation & Benefits Administrator, Mary Ann Ruzich, approved Plaintiff's FMLA request after speaking with Ms. Eldridge, who stated that the 1-3 hours per day for 1-3 days per week was "just in case [Plaintiff] need[ed] time off for appointments or is not feeling well, not that every week she would need to be off up to three hours per day for one to three days." (Doc. 97-3 at 188).

On November 2, 2009, Plaintiff met with Cook and an HR representative concerning her poor attendance since January 1, 2009. (Doc. 105 ¶ 65). At the meeting, Plaintiff asked whether the meeting was related to her October 22 FMLA request; Cook and the HR representative told Plaintiff that it did not relate to her FMLA request but was based on Plaintiff's attendance and job performance since January 1, 2009. (Doc. 97-1 at 84; Doc. 97-3 at 193). Cook and the HR representative told Plaintiff that the meeting concerned Plaintiff's inability to "satisfactorily perform her job duties" and the fact that she had missed over 500 hours of work since beginning employment, including 179 hours since January 1, 2009. (Doc. 97-3 at 193). Cook explained to Plaintiff that he had spoken to her numerous times about her absenteeism and work performance but there had not been any improvements. (*Id.*) Cook was unaware at the time of this meeting whether Plaintiff had been approved for FMLA leave. (Doc. 97-1 at 186). At the meeting, the HR representative told Plaintiff that Plaintiff was entitled to FMLA leave but that she had to comply with Defendant's policies for reporting her absences. (Doc. 97-3 at 193).

At the end of the meeting, Defendant issued Plaintiff a Corrective Action Form containing a written warning for "excessive absenteeism resulting in failure to satisfactorily perform assigned job duties." (Doc. 97-2 at 132). The Corrective Action

Form noted that Plaintiff had been absent 179 hours since January 1, 2009. (*Id.*) Plaintiff was referred to Defendant's Employee Assistance Program and advised that she must comply with the Attendance Policy for reporting of absences. (*Id.* at 132-33; Doc. 105 ¶ 70).

The next day, Plaintiff sent a letter to Tom Delgado, Cook's supervisor, concerning the meeting and her need for FMLA leave. (Doc 105-6). In the letter, Plaintiff explained that her initial absenteeism was due to her need to take her child to preschool each morning because no preschool was open prior to her shift start time of 6 a.m. (*Id.* at 2). Plaintiff reported that Cook told her she was not to use her leave in that manner. (*Id.*) Plaintiff reported that she had since begun to suffer panic attacks and applied for FMLA, but after she told Cook that she needed to apply for FMLA, Cook threatened her with disciplinary action for absenteeism because she had only been contacting him once per day when absent. (*Id.*) Plaintiff recounted that upon returning to work after being absent from October 19-21 and 26-28 due to panic attacks and medication side effects, Cook told her that she could not take intermittent FMLA leave because it was not company policy. (*Id.*)

In the letter, Plaintiff also recounted the November 2 meeting with Cook and the HR representative; Plaintiff reported they said they did not yet have FMLA approval for Plaintiff and did not know if they could accommodate her even with such approval. (*Id.* at 3). Plaintiff stated that Cook and the HR representative said that they had called her physician's office and believed Plaintiff could make appointments on Fridays, evenings, or Saturdays where Plaintiff would not have to use leave. (*Id.*) Plaintiff also stated that she subsequently talked to her senior manager who said he had given Cook permission to accommodate Plaintiff but this was not mentioned at the meeting. (*Id.*)

Plaintiff met with Delgado on November 10, 2009 to discuss her work schedule. (Doc. 109 ¶ 73). Delgado approved an alternate work schedule for Plaintiff in which she started two hours later for two days of the week and also worked four hours from home on Fridays. (*Id.* ¶ 78). Six days later, Plaintiff and Cook signed a memorandum agreeing

1  to the modified schedule on the conditions that it was temporary (not to extend beyond
2  June 30, 2010), Plaintiff's work from home was documented, Plaintiff would build up a
3  reserve of sick and vacation time that she could use for her doctor's appointments and if
4  Plaintiff had no such time she would not be compensated for time missed, any deviations
5  from this schedule would be discussed in advance, and Plaintiff would advise Cook "as
6  soon as possible if some unforeseen situation arises but no later than the normally
7  schedule [sic] on-duty time." (Doc. 97-2 at 137).

8        On December 28, 2009, while Cook was on vacation, Plaintiff failed to report to
9  work at her scheduled 6:00 a.m. start time. (Doc. 97-1 at 114-15). Plaintiff did not call in
10 prior to her start time but told an employee who had called her that she was sick and
11 would not be in. (*Id.* at 115). On December 29, Plaintiff called in to her acting supervisor
12 just after her scheduled start time to report that she did not think she would be in at all
13 that day due to illness. (*Id.* at 119). On December 30, Plaintiff e-mailed Cook and
14 informed him that she had been out the last two days "on FMLA." (Doc. 97-2 at 152).

15       On January 11, 2010, Plaintiff received a Corrective Action Form giving her a
16 one-day unpaid suspension and requiring her immediate compliance with Defendant's
17 attendance policy and the agreement between her and Cook. (Doc. 97-2 at 155). The
18 basis for this action was Plaintiff's continued failure to follow Defendant's attendance
19 policies and the terms of the agreement between her and Cook concerning her schedule
20 and leave. (*Id.* at 154). Specifically, the Corrective Action Form asserted that on
21 December 28, 2009, Plaintiff failed to show up for work at her start time and never
22 notified her manager that she would be absent, and on December 29, 2009, Plaintiff
23 failed to show up at her start time and tardily informed her manager that she would be
24 late but never was in that day. (*Id.*) The form also noted Plaintiff's performance issues,
25 including failing to properly schedule employees for appointments, failure to provide
26 work order updates necessary to maintain certain company certifications, and failure to
27 communicate with a vendor concerning scheduling employee physicals. (*Id.*)

28       In early January 2010, Plaintiff requested to modify her schedule because of

1 childcare issues. (Doc. 105 ¶ 126). Plaintiff and Cook agreed upon a new schedule of
2 Monday through Thursday from 8 a.m to 4:30 p.m., with four hours of working from
3 home on Friday. (Doc. 97-3 at 197). This schedule was temporary and effective only until
4 January 16, 2010. (*Id.*) Less than two weeks later, Plaintiff requested another schedule
5 change, which Cook approved. (Doc. 97-2 at 158). Plaintiff and Cook agreed that from
6 January 17 through January 30, Plaintiff would work Monday through Thursday from 7
7 a.m. to 4:30 p.m. and on Friday from 8 a.m. to noon. (*Id.*)

8 On January 25, 2010, Plaintiff called Cook prior to her start time and advised him
9 that she would be late to work; she later called him to say she would not be in at all that
10 day, but would be in tomorrow. (*Id.* at 129). On January 26, Plaintiff arrived a half hour
11 late but did not call to advise Cook of this. (*Id.*) On January 27, Plaintiff called in prior to
12 her start time to say she would be late. (*Id.*) On January 28, Plaintiff called Cook at 2:30
13 a.m. to tell him she would not be in that day because her son was sick. (*Id.* at 130). On
14 January 29, Plaintiff called another employee prior to her start to advise that her son was
15 still sick and she would try to be in; she arrived at 11:30 a.m. and left at 1 p.m. (*Id.*)

16 During this time, Defendant believed that Plaintiff was considering her FMLA
17 leave to apply to full-day absences from work while the medical certification on file
18 indicated a reduced schedule of only 1-3 hours per day, 1-3 days per week. (Doc. 97-3 at
19 199). On January 12, 2010, Defendant, though Senior Compensation and Benefits
20 Administrator Mary Ann Ruzich, requested Plaintiff obtain an updated certification from
21 her healthcare provider. (*Id.*) Although Ruzich reminded Plaintiff to submit the form by
22 January 25, Plaintiff failed to do so. (Doc. 105 ¶ 239). On January 27, Ruzich again
23 reminded Plaintiff to submit the form. (*Id.* ¶ 241). Plaintiff's healthcare provider did not
24 submit the completed form to Ruzich until February 4, three days after Plaintiff was
25 terminated.

26 Defendant terminated Plaintiff on February 1, 2010 for excessive absenteeism and
27 performance issues. (*Id.* ¶ 146). Defendant's termination committee noted in its report
28 that Plaintiff had missed "over 280 hours of work since January 1, 2009 (101 hours since

November 2, 2009)" and that Plaintiff had repeatedly received informal warnings in addition to the May 2007 verbal warning, the November 2009 written warning, and the January 2010 suspension. (Doc. 97-3 at 2).

Following her termination, Plaintiff filed a complaint with the Department of Labor for an alleged violation of her FMLA rights. (*Id.* at 236). The Department of Labor concluded that Plaintiff's allegation could not be substantiated. (*Id.*)

### B. Legal Standard

#### 1. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the

1  evidence is such that a reasonable jury could return a verdict for the non-moving party.
2  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare
3  assertions, standing alone, are insufficient to create a material issue of fact and defeat a
4  motion for summary judgment. *Id.* at 247–48. However, in the summary judgment
5  context, the Court construes all disputed facts in the light most favorable to the non-
6  moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### 2. Interference with FMLA Rights

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c). Thus, the Ninth Circuit Court of Appeals ("Ninth Circuit") has held that "an employee may prevail on a claim that an employer interfered with her rights by terminating her in violation of [the] FMLA by showing[] 'by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.'" *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135-36 (9th Cir. 2003) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001)).

### C. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment in its favor, alleging that it terminated Plaintiff for a "legitimate, non-discriminatory and non-retaliatory reason." (Doc. 96 at 1). Before the Court addresses the merits of Defendant's motion, it must first resolve a discrepancy between the parties' interpretation of the claim at issue in this case.

### 1. Interference vs. Retaliation

It appears from the parties' filings that the parties disagree as to the claim or claims at issue in this case. Defendant believes the sole claim is for interference with

FMLA rights. *See* (Doc. 96 at 1) ("In her Complaint, Gressett asserts a single cause of action . . ."); (Doc. 102 at 11) ("When a plaintiff asserts that her leave was the basis for her termination, she is asserting an interference claim, rather than a retaliation claim."). However, Plaintiff apparently believes she has alleged claims for both interference and retaliation. *See* (Doc. 104 at 1) (". . . FMLA claims . . . material questions of fact remain regarding whether CAP interfered . . . material questions of fact remain regarding whether CAP retaliated against . . . ."). Further complicating matters, Defendant elsewhere in its motion for summary judgment refers to Plaintiff as having a separate retaliation claim. *See* (Doc. 96 at 12-13).

This confusion appears to result from the difference between the vernacular meanings of "retaliation" and "discrimination" and their meanings as terms of art in the FMLA context. Although the FMLA sets forth two types of claims, one for interference with FMLA rights (29 U.S.C. § 2615(a)(1)) and the other for discrimination or retaliation for opposing FMLA-violating practices (29 U.S.C. § 2615(a)(2), (b)), the words discrimination and retaliation are regularly used to describe the factual circumstances of interference claims. For example, the FMLA regulations describe interference claims as involving discrimination or retaliation: "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). But the same regulation also uses retaliation as a FMLA term of art: "Individuals, and not merely employees, are protected from retaliation for opposing (e.g. filing a complaint about) any practice which is unlawful under the [FMLA]." *Id.* § 825.220(e).

The Ninth Circuit has clarified that 29 U.S.C. § 2615(a)(1), which prohibits employers from "interfer[ing] with" FMLA rights, is the interference provision of the FMLA. *Bachelder*, 259 F.3d at 1124. Section 2615(a)(2), which prohibits employers from discriminating "against any individual for opposing any practice made unlawful by [the FMLA]," is the anti-retaliation or anti-discrimination provision of the FMLA.[4] *Id.*

---

[4] Similarly, § 2615(b) prohibits discrimination against any individual for

- 13 -

The Ninth Circuit has aptly noted:

> Some of the case law applying § 2615 erroneously uses the term "discriminate" to refer to interference with exercise of rights claims. This semantic confusion has led many courts to apply anti-discrimination law to interference cases, instead of restricting the application of such principles—assuming they are applicable to FMLA at all—to "anti-retaliation" or "anti-discrimination" cases under §§ 2615(a)(2) and (b).

*Id.* at 1124 n.10 (citations omitted). The Third Circuit Court of Appeals has also recognized the confusion and agrees with the Ninth Circuit that the act of retaliation for taking FMLA leave is properly categorized as interference under the FMLA. *See Conoshenti v. Public Serv. Electric & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004).

Thus, "[b]y their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder*, 259 F.3d at 1124. Rather, "the statutory and regulatory language of [the] FMLA makes clear that where an employee is subjected to 'negative consequences . . . simply because he has used FMLA leave,' the employer has interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1)." *Xin Liu*, 347 F.3d at 1136 (quoting *Bachelder*, 259 F.3d at 1124). The issue "becomes one of discrimination and retaliation" only when "an employee is punished for *opposing* unlawful practices by the employer." *Id.*

In the present case, Plaintiff's complaint alleges in essence that Defendant fired Plaintiff because Plaintiff exercised her rights to FMLA leave. (Doc. 1). The complaint does not allege that Defendant fired Plaintiff because Plaintiff opposed Defendant's unlawful violations of the FMLA. The Court has found no allegations in the complaint supporting a retaliation claim under the FMLA,[5] and construes the complaint as alleging

---

instituting or participating in FMLA proceedings.

[5] A single paragraph in the Complaint alleges that Plaintiff complained to her supervisors about hostility toward workers who used FMLA leave. (Doc. 1 at 5). But Plaintiff never alleges that she was terminated because of her complaint and both the balance of the Complaint and Plaintiff's filings posit only that Plaintiff was terminated because of her taking of FMLA leave.

- 14 -

a single claim for interference under the FMLA. Therefore, to the extent the parties make arguments concerning a retaliation claim, the Court will consider them applicable to the interference claim and will analyze them accordingly.[6]

### 2. Interference Claim

Defendant argues that Plaintiff was terminated because she violated Defendant's Attendance Policy and failed to satisfactorily perform her job duties. (Doc. 96 at 17). Accordingly, Defendant contends that Plaintiff cannot show any evidence "that she was terminated because she took intermittent FMLA leave." (*Id.*) Defendant's argument fails because it misstates both the law and the facts. To survive summary judgment, Plaintiff has to show only the existence of a genuine issue of material fact as to whether FMLA-protected leave was a negative factor in Defendant's decision to terminate her.[7] *See Xin Liu*, 347 F.3d at 1135-36.

Plaintiff alleges that her termination decision improperly relied upon at least two days for which she took FMLA-protected leave: December 28 and 29, 2009. (Doc. 104 at 2). Defendant contends that although the December 28 and 29 days were FMLA leave days, they were properly the subject of the January 2010 Corrective Action because

---

[6] The Court also notes that Defendant errs in applying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to Plaintiff's claims. As the Ninth Circuit has repeatedly held, *McDonnell Douglas* has no application to FMLA interference claims. *Xin Liu*, 347 F.3d at 1136; *Bachelder*, 259 F.3d at 1125.

[7] Defendant objects in its reply to some of Plaintiff's controverting and separate statements on the basis that Plaintiff "asserts inappropriate 'objections' containing additional argument, misstates or mischaracterizes testimony/records, does not cite to evidence in the record, cites to testimony/records that does not support her statements, and relies on inadmissible hearsay statements." (Doc. 108 at 2). Defendant cites numerous statements of fact by paragraph number but fails to state which of these objections applies to each statement. Objections to evidence must be specific and state the ground for the objection for each particular item of evidence. *See* Fed. R. Evid. 103(a). Furthermore, some of Defendant's objections are not cognizable evidentiary objections. *See, e.g.*, *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1063 (C.D. Cal. 2012) ("Mischaracterization of evidence is not a cognizable evidentiary objection."). The Court overrules Defendant's objections.

Defendant also objects to Plaintiff's declaration submitted in support of her response to Defendant's motion for summary judgment on the grounds that it is a self-serving attempt to manufacture an issue of fact by contradicting her deposition. (Doc. 108 at 2). Because the Court has not considered this declaration in ruling on Defendant's motion, it need not reach the merits of this objection.

- 15 -

1  Plaintiff failed to comply with the FMLA regulations on providing notice of intent to take
2  leave. *See* (Doc. 96 at 11-12). Defendant explicitly based Plaintiff's January 2010
3  suspension upon her alleged failure to comply with both Defendant's Attendance Policy
4  and the written agreement between Plaintiff and Cook concerning December 28, 2009
5  and December 29, 2009. (Doc. 97-2 at 154). Furthermore, Defendant's decision to
6  terminate Plaintiff was explicitly based upon Plaintiff's prior disciplinary history
7  including the January 2010 suspension. (Doc. 97-3 at 2).

8  An employee requiring FMLA leave that is unforeseeable "must provide notice to
9  the employer *as soon as practicable* under the facts and circumstances of the particular
10 case." 29 C.F.R. § 825.303(a) (emphasis added). Generally, it "should be practicable to
11 provide notice of leave that is unforeseeable within the time prescribed by the employer's
12 usual and customary notice requirements applicable to such leave." *Id.*; *see also* 29
13 C.F.R. § 825.303(c) (an employee "must comply with the employer's usual and
14 customary notice and procedural requirements . . . absent unusual circumstances").

15 Defendant errs to the extent it contends Plaintiff was required to strictly comply
16 with Defendant's usual and customary notice requirements. *See* (Doc. 96 at 10). The
17 FMLA requires that notice of unforeseeable leave be given only "as soon as practicable"
18 and this requirement is controlling notwithstanding any verbiage in Defendant's
19 Attendance Policy. *See Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1225 (S.D.
20 Cal. 1998) (employer's policy requiring employees to call within a half hour of their start
21 time could not override the FMLA's "as soon as practicable" requirement). If Plaintiff
22 complied with the FMLA's notice requirements but Defendant terminated her based in
23 part on her failure to comply with Defendant's Attendance Policy on FMLA-protected
24 days, then Defendant necessarily violated the FMLA.[8]

---

26 [8] Defendant misunderstands the nature of an FMLA interference claim when it
27 argues that Plaintiff's claim must fail because Plaintiff was never denied FMLA-protected leave. *See* (Doc. 108 at 3). As the Court has stated, if Plaintiff's taking of FMLA-protected leave was a negative factor in Defendant's decision to terminate
28 Plaintiff, Defendant interfered with Plaintiff's FMLA rights. *See Bachelder*, 259 F.3d at 1126 ("If those absences were, in fact, covered by the Act, America West's consideration of those absences as a 'negative factor' in the firing decision violated the [FMLA].")

1  With respect to December 28, Plaintiff testified at her deposition that she had been unconscious due to an interaction between her medications and woke up that morning only after receiving a phone call from Rory Crane. (Doc. 97-1 at 114-15). During that call, Rory had indicated that her acting supervisor was in the safety office with him, and Plaintiff told Rory she wasn't feeling well. (*Id.* at 115). Plaintiff then texted Rory and asked him to tell her supervisor she wasn't going to be in. (*Id.*) Plaintiff believed this notified her supervisor because she believed based on the phone call that her supervisor was in the same office with Rory at the time. (*Id.*) A reasonable juror could conclude from this evidence that Plaintiff provided notice of her intent to take leave as soon as practicable given her medical condition.

Similarly, with respect to December 29, Plaintiff testified at her deposition that she called her supervisor at 8:06 a.m. to advise that she wouldn't be in at all that day. (*Id.* at 119). Because Defendant's records show Plaintiff called at 8:30 a.m. and advised that she would be late, but not absent, (Doc. 97-2 at 154), there exists a genuine issue of material fact as to whether Plaintiff notified Defendant as soon as practicable of her need to take FMLA leave for the entire day. Thus, Plaintiff has shown the existence of a genuine issue of material fact as to whether her taking of FMLA-protected leave constituted a negative factor in Defendant's decision to terminate her, and consequently whether Defendant interfered with her FMLA rights.[9]

In light of this conclusion, the Court need not address Defendant's arguments in its motion concerning the number of hours Plaintiff had been absent, the extent of her attendance problems, and the impact Plaintiff's sporadic attendance had upon Defendant's operations. *See* (Doc. 96 at 14-17). These facts are not legally relevant to

---

[9] Defendant contends that "an employer is not liable for interfering with FMLA rights if . . . the employer would have discharged the employee even if she had not exercised her FMLA rights." (Doc. 96 at 11) (citing *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008)). Defendant apparently attaches some significance to the logical value of this proposition, but it simply expresses that if an employee's taking of FMLA-protected leave was not a negative factor in the employer's decision to terminate the employee, then the taking of FMLA-protected leave is not itself sufficient to render the employer liable. This is fully consistent with the rule set forth earlier in this Order. *See Xin Liu*, 347 F.3d at 1135-36.

1 whether there is a genuine issue of material fact as to whether Plaintiff complied with the
2 FMLA notice requirements and therefore whether Defendant disciplined and ultimately
3 terminated Plaintiff for taking FMLA-protected leave. Defendant's discussion is guided
4 by its misapplication of the law, as the Court has pointed out. *See supra* note 6.

5 Similarly, because Plaintiff has shown the existence of a genuine issue of material
6 fact on her interference claim based upon her notice on December 28 and 29, 2009,
7 summary judgment for Defendant must be denied on this basis alone and the Court need
8 not address Plaintiff's arguments considering retroactive application of FMLA time,
9 timely notice of FMLA eligibility, Defendant's alleged failure to inquire as to the reasons
10 for Plaintiff's absences, Plaintiff's termination as pretext for retaliation, Defendant's
11 alleged tampering with a Corrective Action Form, and the like. *See* (Doc. 104 at 3-17).
12 For the same reason, the Court need not address Defendant's rebuttal to these arguments.
13 *See* (Doc. 108 at 2-11).

14 Accordingly, the Court will deny Defendant's motion for summary judgment.

### D. Plaintiff's Motion for Summary Judgment

16 Plaintiff moves for partial summary judgment on the issue of liability, asking the
17 Court to conclude that as a matter of law Defendant violated Plaintiff's FMLA rights.
18 (Doc. 94 at 1). Plaintiff argues that the evidence shows Defendant's decision to terminate
19 Plaintiff was based upon days in which Plaintiff took FMLA leave. (*Id.* at 5). Although
20 Plaintiff is correct that Plaintiff's actions or inactions that gave rise to Defendant's
21 termination decision occurred on days in which Plaintiff took FMLA-protected leave,
22 Plaintiff errs in assuming that this is sufficient to show Plaintiff's taking of FMLA-
23 protected leave was a negative factor in Defendant's decision to terminate her.

24 The mere fact that an employee took leave ultimately designated as FMLA-
25 protected leave does not excuse the employee from giving adequate notice of intent to
26 take leave. *See* 29 C.F.R. § 825.303(a). To establish her FMLA interference claim,
27 Plaintiff has the burden of showing she "provided sufficient notice of [her] intent to take
28 leave." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014). Thus,

Defendant could properly base its decision to terminate Plaintiff on any noncompliance with the FMLA notice provisions, even if the days on which such noncompliance occurred were FMLA-protected leave days.

As the Court concluded with respect to Defendant's motion for summary judgment, a genuine issue of material fact exists as to whether Plaintiff complied with the FMLA notice requirements for two of the FMLA-protected days, December 28 and 29, 2009.[10] At present, because Defendant's termination committee report cites both Plaintiff's absences and alleged failure to give proper notice, viewing all reasonable inferences in the light most favorable to Defendant, the Court cannot conclude that no reasonable juror could find in favor of Defendant. Accordingly, the Court will deny Plaintiff's motion for summary judgment.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** denying Plaintiff's Motion to Strike 111 Extraneous and Unnecessary Statements of Fact and Request for Expedited Consideration (Doc. 98).

**IT IS FURTHER ORDERED** denying Defendant's Motion for Summary Judgment (Doc. 96).

**IT IS FURTHER ORDERED** denying Plaintiff Amie Gressett's Motion for Partial Summary Judgment (Doc. 94).

Dated this 13th day of August, 2014.

*James A. Teilborg*
Senior United States District Judge

---

[10] The issues of material fact surrounding these two days are sufficient to deny summary judgment; thus the Court has not considered the relevance of other absences to trial.