**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amie M. Gressett,<br><br>                Plaintiff,<br><br>v.<br><br>Central Arizona Water Conservation District,<br><br>                Defendant. | No. CV-12-00185-PHX-JAT<br><br>**ORDER** |

In this Family and Medical Leave Act ("FMLA") case, the jury concluded that Defendant Central Arizona Water Conservation District, as the operating agency for the Central Arizona Project, violated the FMLA by interfering with Plaintiff Amie Gressett's FMLA rights. The jury awarded Plaintiff $140,000 in compensatory damages. Following this verdict, the issues pending before the Court are whether awards of liquidated damages and front pay are appropriate, and if so, in what amounts. The Court has considered the parties' briefs (Docs. 171, 172, 173) as well as their arguments at a hearing on these issues.

**I.     Liquidated Damages**

      **A.     Legal Standard**

Under the FMLA, a successful plaintiff is presumptively entitled to an award of liquidated damages equal to the amount of employment benefits denied or lost to her by reason of the defendant's FMLA violation, including interest. 29 U.S.C. § 2617(A)(1)(i)-(iii). However, "if an employer who has violated [the FMLA] proves to the satisfaction of

the court that the act or omission [that violated the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the FMLA]," the court may, in the discretion of the court, reduce the amount of liability to the jury's award of lost employment benefits plus interest. 29 U.S.C. § 2617(A)(1)(iii). In determining whether a defendant acted in good faith and had reasonable grounds for believing its actions were not violative of the FMLA, a court must make specific, explicit findings and explain its reasoning. *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1015-16 (9th Cir. 2010).

**B.     Analysis**

Plaintiff asks the Court to award $140,000 in liquidated damages, the amount equal to the jury's award of compensatory damages for lost employment benefits to Plaintiff. Defendant argues that liquidated damages are unwarranted because it undertook its FMLA obligations in good faith and reasonably believed its actions did not violate the FMLA.

During the Court's hearing, the Court asked Defendant how there could be an absence of bad faith in this case if Plaintiff was terminated without any effort to reconcile which of her hours off from work were protected by the FMLA and which were not. The evidence at trial showed that Plaintiff had accumulated a number of absences, some of which were for FMLA-protected reasons and some of which were not. The evidence also showed that although Defendant's employees were aware of Plaintiff's FMLA status, they failed to account for Plaintiff's FMLA time and did not compile a spreadsheet tracking this time until well after Plaintiff was terminated and Defendant had to respond to an inquiry by the United States Department of Labor.

Defendant's spreadsheet, created for the Department of Labor and admitted at trial as Exhibit 35, admitted that many of Plaintiff's absences were FMLA-protected. At least two absences admitted by Defendant (long after Plaintiff's termination) to be FMLA-protected were the subject of disciplinary action against Plaintiff, including being the subject of consideration when Defendant's termination committee recommended

terminating Plaintiff. The termination committee based its recommendation upon a termination packet provided to them by Michelle Ludke, employed by Defendant as a senior human resources generalist. This packet contained Plaintiff's prior disciplinary history, e-mails, and other relevant items, and was admitted at trial as Exhibit 115.

Ludke admitted at trial that she compiled the termination packet and that she did not include in the packet any specific accounting of Plaintiff's FMLA-protected absences. Indeed, upon prompting by Plaintiff's counsel, Ludke examined the entire contents of Exhibit 115 and testified that it did not contain any references to certain hours being designated as FMLA time off. David Modeer, Defendant's general manager and the individual responsible for making termination decisions, testified that he terminated Plaintiff for absenteeism and poor performance. He also testified that he knew at the time of the termination meeting that Plaintiff had been granted FMLA leave, but his termination decision did not consider any FMLA leave. However, Modeer was unable to identify anything in Exhibit 115, the termination packet, identifying which of Plaintiff's absences were FMLA-protected.

Additionally, Plaintiff's counsel asked Modeer the following question:

> Q: If it turns out that even one of those absences that you considered was protected by FMLA, would the decision to terminate have been improper?
>
> A: Not necessarily.

Modeer's answer speaks for itself.

The evidence at trial also showed that Mike Cook, Plaintiff's supervisor, kept notes pertaining to Plaintiff's absences. None of these notes contained a single reference to FMLA time. Neither did the payroll records. Mary Ann Ruzich, employed by Defendant as a senior compensation and benefits administrator and in charge of Defendant's FMLA obligations, claimed on cross-examination that she tracked FMLA absences in a spreadsheet. However, when pressed, she admitted that her "FMLA" spreadsheet (admitted as Exhibit 26) never mentioned FMLA.

Defendant argued, in response to the Court's question concerning tracking FMLA

- 3 -

1   time, that it was entitled to not count all of Plaintiff's absent hours as FMLA-protected
2   time if the number of hours missed exceeded the number of hours listed in Plaintiff's
3   medical certification. Accordingly, Defendant asserted that for some of the days listed in
4   Exhibit 35, not all of the hours for which Plaintiff was actually absent qualified as
5   FMLA-protected leave. As part of the process for requesting FMLA time, Plaintiff had
6   obtained a medical certification form from Carol Eldridge, her medical provider. This
7   form, admitted as Exhibit 2, stated that Plaintiff might need "1-3 hour(s) per day; 1-3
8   days per week" of FMLA time off for her serious medical condition. The form also stated
9   that Plaintiff's serious medical condition would cause episodic flare-ups periodically
10  preventing Plaintiff from performing her job functions, and Plaintiff would need to be
11  absent from work during these flare-ups.

12  The evidence at trial showed that Defendant improperly construed the medical
13  certification form in an overly narrow manner in two ways. First, Defendant interpreted
14  this form without respect to Plaintiff's episodic flare-ups. Ludke testified that none of
15  Defendant's employees ever communicated to her that Plaintiff should still be permitted
16  FMLA time off if Plaintiff had a flare-up falling outside of the one to three hours per day,
17  one to three days per week listed in the certification. Second, Defendant ignored its own
18  written policy concerning FMLA leave beyond the scope of a medical certification form.
19  Exhibit 40, admitted at trial, is an e-mail from Ludke to Cook and Ruzich that described
20  the appropriate action to be taken when an employee's FMLA time off exceeds the time
21  estimated on the medical certification form. Exhibit 40 specifies that "as long as the
22  employee is taking time off for her FMLA-qualifying illness, you should always count
23  the actual time without regard to any prior estimates by the physician or the employee."
24  Evidence at trial showed that Defendant's employees believed that Plaintiff was only
25  entitled to a maximum of three hours of FMLA leave per day, regardless of the actual
26  cause for her leave.

27  Defendant suggests to the Court that its decision to terminate was made in good
28  faith because the termination committee had Cook's notes and Ludke's timeline in its

- 4 -

possession when it recommended termination. But the evidence showed that Cook's notes did not account for Plaintiff's FMLA time and Ludke never prepared a timeline accounting for Plaintiff's FMLA time. Thus, Defendant's suggestion fails. Defendant also argues that because its employees initially assisted Plaintiff in applying for FMLA benefits, it acted in good faith. Defendant's initial actions do not excuse its later failings, and the Court rejects this argument. The Court has also considered the balance of Defendant's points raised at the hearing, and finds them to be similarly unpersuasive.

The Court finds that Defendant has not proved by a preponderance of the evidence that its actions were in good faith and that it had reasonable grounds for believing its actions did not violate the FMLA. It is true that there is no evidence that Defendant terminated Plaintiff with the specific intent of violating her FMLA rights. However, Defendant was clearly willfully indifferent to Plaintiff's FMLA rights. The sum of the evidence presented at trial showed a continuous pattern of behavior that ignored Plaintiff's FMLA-protected leave and assessed disciplinary actions against Plaintiff based on the totality of her absences. This was despite Defendant knowing that only Plaintiff's non-FMLA absences could have been counted against her.[1]

Other courts have found the failure to comply with the FMLA's notice requirements and to accurately track an employee's FMLA leave to constitute bad faith justifying an award of liquidated damages. *See, e.g.*, *Dollar v. Smithway Motor Xpress, Inc.*, 787 F. Supp. 2d 896, 926 (N.D. Iowa 2011), *vacated in part on other grounds by* 710 F.3d 798 (8th Cir. 2013); *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 366 (Ky. Ct. App. 2010). In particular, the court in *Dollar* found that because the employer failed to consider the FMLA when firing the employee, the employer was willfully indifferent to the FMLA and did not act in good faith. 787 F. Supp. 2d at 926.

---

[1] As an additional example of this behavior, Defendant never sent Plaintiff a formal notice of approval of her FMLA request until January 27, 2010, shortly before Plaintiff's termination on February 1, 2010. Plaintiff was terminated before she even read her formal FMLA approval. This violated the FMLA's employer notice requirement. In addition, the content of this untimely notice was defective. *See* 29 C.F.R. § 825.300(b), (c).

- 5 -

For the foregoing reasons, the Court will award liquidated damages to Plaintiff and against Defendant in the statutorily-authorized amount.[2] The Court awards Plaintiff $140,000 in liquidated damages.

## II.     Front Pay

### A.     Legal Standard

The FMLA grants courts the power to award "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Front pay is a substitute for reinstatement when reinstatement is not viable "because of continuing hostility" between the employee and employer. *Traxler*, 596 F.3d at 1009 n.1 (citation omitted). The Ninth Circuit Court of Appeals has held that the determination of front pay, as an equitable award, "rests solely with the court." *Id.* at 1014. An award of front pay is appropriate to compensate an employee for lost compensation during the period between the date on which judgment is entered and the employee's future reinstatement (or in lieu of reinstatement). *Id.* at 1009 n.1.

As with back pay awards, front pay awards "must be reduced by the amount plaintiff could earn using reasonable mitigation efforts." *Cassino v. Reichhold Chem., Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987) (applying front pay in a discrimination case). Front pay is "intended to be temporary in nature," and "does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing." *Id.* (quoting *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984)).

---

[2] As a further basis for a finding of bad faith, here Defendant clearly failed to follow its own procedure of permitting an employee to take FMLA leave beyond the estimate in the medical certification form. *See* (Ex. 40). The Ninth Circuit Court of Appeals has held, in an unpublished disposition not suitable for citation, that an employer's violation of its own written practices is fatal to its good faith defense.

Separately, the Court notes that the FMLA requires an award of interest on the amount of employment benefits lost by the employer's FMLA violation and this interest amount is duplicated as part of any liquidated damages award. Because the Court presumes the jury's award of $140,000 includes any interest prior to the date of the verdict, the Court presumes that a liquidated damages award of $140,000 will satisfy the statute. This figure does not include, of course, any post-judgment interest.

- 6 -

**B.     Analysis**

Plaintiff bears the burden of proving by a preponderance of the evidence that an award of front pay is justified. The Court concludes that such an award is appropriate. Front pay is an equitable remedy and prospective remedies recognize the fact that the employee's unemployment, caused by the employer's misconduct, does not magically terminate simply because judgment enters in favor of the employee. Instead, there is a period of time during which the employee's diligent search for employment must continue until the employee ultimately finds employment in a substantially similar position.

In the present case, the evidence at trial, including the Court's observation of Plaintiff while testifying, shows that Plaintiff is a highly articulate, intelligent woman who made the best of a bad situation by going back to school and equipping herself to be competitive in the workforce. Plaintiff has previously had a successful career as a safety specialist both with the federal government and with Defendant (prior to her FMLA experience). The period of time during which Plaintiff experienced her serious medical condition was an aberrant period and all of the evidence points to Plaintiff having a successful career going forward. The Court has no doubt that Plaintiff's qualities will help her find a job in short time. For these reasons, the Court concludes that a front pay period of three years is appropriate.

The Court now turns to calculating the appropriate amount of front pay. At trial, Plaintiff's expert witness Paul Bjorklund testified to projections for Plaintiff's future damages, which are in evidence as Exhibit 47. For each year from 2010 through 2036, Bjorklund calculated two values for Plaintiff. First, Bjorklund calculated the estimated value of Plaintiff's continued employment with Defendant, estimating her future salary and value of employment benefits.[3] Second, Bjorklund calculated the estimated future mitigation by Plaintiff. Bjorklund computed these tables based on several scenarios, including mitigation assuming Plaintiff continued her employment as a paralegal earning

---

[3] This incorporates variables such as projected inflation rates.

- 7 -

1 about $20 per hour and mitigation assuming Plaintiff earned a median paralegal salary.[4]

Bjorklund produced four tables. The Court believes the estimates based on mitigation at Plaintiff's then-current pay as a paralegal are most appropriate to use in this case because the mitigation assumption is based on actual earnings by Plaintiff, and personalized historical data is preferable to descriptive statistics concerning an entire profession. The Court also deems Bjorklund's tables incorporating income tax effects to be needlessly complicated and the Court is aware of no authority requiring it to adjust awards so that the effects upon the recipients are tax-neutral vis-à-vis the position the recipient would have been in had she not been wronged.

Finally, at the hearing on front pay Defendant speculated as to the meaning of the jury's verdict and inferred from that verdict that the jury may not have found Plaintiff adequately mitigated her damages. Defendant argued that it would be consistent with the jury's verdict to not award front pay. The Court cannot speculate as to the means by which the jury reached its figure of $140,000 and Defendant's attempt to divine the intent of the jury is improper. Although Plaintiff did take time off from the workforce to care for her children, the evidence showed she made substantial efforts to find employment. *See* (Ex. 46). Plaintiff testified as to her extensive job search, including her post-termination employment and her ultimately-unsuccessful interviews. For these reasons, the Court rejects Defendant's arguments and concludes that an award of front pay is consistent with the jury's verdict.

Bjorklund's figures are for each calendar year. Because the Court is entering judgment on March 31, 2015, the three-year period does not correspond to calendar years. Accordingly, the Court must compute the loss figures for each year of the three-year period based upon the weighted average of the two calendar years across which the period year runs.

Accordingly, the Court computes the award of front pay as follows, taking the

---

[4] After Plaintiff's termination by Defendant, she returned to school and subsequently obtained temporary employment for a time as a paralegal.

- 8 -

figures from page 1 of Exhibit 47:[5]

$$(\$26{,}736 * 0.75) + \$26{,}777 + \$26{,}817 + (\$26{,}858 * 0.25) = \$80{,}360.50.$$

This number reflects the sum of the loss for the remaining three quarters of 2015, all of 2016, all of 2017, and the first quarter of 2018.

**III.   Attorneys' Fees**

The FMLA provides that the court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." Accordingly, the Court will permit Plaintiff to move for an award of attorneys' fees and to file a bill of costs in accordance with the Local Rules of Civil Procedure.

**IV.   Conclusion**

Pursuant to Federal Rule of Civil Procedure 58(a), which requires judgments to be set forth in a separate document, the Court has entered its judgment in a separate document filed contemporaneously with this Order. To the extent the judgment does not grant all of the relief discussed in this Order,

**IT IS ORDERED** that Plaintiff may move for an award of attorneys' fees in accordance with Local Rule of Civil Procedure 54.2. The motion for an award of attorneys' fees shall be accompanied by an electronic spreadsheet, to be e-mailed to the Court and opposing counsel, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet shall be organized with rows and columns and shall automatically total the amount of fees requested so as to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its memorandum of points and authorities filed in support of its motion. A party opposing a motion for attorneys' fees shall e-mail to the Court and

---

[5] Bjorklund testified that his figures are already discounted to reduce the future payments to present value.

- 9 -

1  opposing counsel a copy of the moving party's spreadsheet adding any objections to each
2  contested billing entry (next to each row, in an additional column) so as to enable the
3  Court to efficiently review the objections and recompute the total amount of any award
4  after disallowing any individual billing entries. This spreadsheet does not relieve the non-
5  moving party of the requirements of Local Rule 54.2(f) concerning its responsive
6  memorandum.

7  **IT IS FURTHER ORDERED** that Plaintiff may file a notice of taxable costs in
8  accordance with Local Rule of Civil Procedure 54.1.

9  Dated this 31st day of March, 2015.

James A. Teilborg
Senior United States District Judge